


FILED

May 16 2024, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N   T H E

# Court of Appeals of Indiana

Christopher Nardi,

*Appellant / Cross-Appellee / Plaintiff*

v.

J. Bradley King and Angela M. Nussmeyer in their official capacities as members of the Indiana Election Division,

*Appellees / Cross-Appellants / Defendants*

---

May 16, 2024

Court of Appeals Case No.
23A-PL-2832

Appeal from the Marion Superior Court

The Honorable John F. Hanley, Judge

Trial Court Cause No.
49D11-2107-PL-22664

---

**Opinion by Judge Bradford**
Chief Judge Altice and Judge Felix concur.

**Bradford, Judge.**

## Case Summary

In December of 2020, Christopher Nardi requested three documents from the Indiana Election Division ("the Division"), two of which requests it denied and one to which it responded by directing Nardi to an online copy of the requested document. After reviewing the online document, Nardi filed a complaint with the Indiana Public Access Counselor ("the PAC"), and, when that was unsuccessful in achieving disclosure of the documents, sued J. Bradley King and Angela M. Nussmeyer ("Appellees") in their official capacities as members of the Division pursuant to the Indiana Access to Public Records Act ("the Act"). Both sides moved for summary judgment, and the trial court entered partial summary judgment in favor of Nardi, ordering the disclosure of one of the three documents sought. The trial court also awarded Nardi one-third of the attorney's fees and costs he had requested. Nardi contends that the trial court abused its discretion in failing to award him the entire amount of fees and costs he had requested, which was $61,471.30, while Appellees argue that the trial court erred in awarding Nardi *any* fees and costs because he had failed to substantially prevail in his lawsuit. Because we agree with Appellees, we affirm the trial court's entry of partial summary judgment in favor of Nardi but reverse its partial grant of his request for fees and costs.

# Facts and Procedural History

[2] On December 6, 2020, Nardi submitted a request for public records to the Division pursuant to the Act. Nardi requested a full copy of the latest maintenance contract, the standard operating procedures ("SOPs"), and build notes for the Indiana Statewide Voter Registration System ("the System"). The Division denied Nardi's requests for SOPs and build notes and directed him to a website where he could access the maintenance contract. Although Nardi admittedly accessed the website, he did not save a copy of the latest maintenance contract, which was later removed.

[3] On January 14, 2021, Nardi filed a formal complaint with the PAC, arguing that the Division should have granted his requests to disclose SOPs and build notes, a complaint later revised to encompass the maintenance contract after it had been removed from the relevant website. In response to Nardi's complaint, the PAC opined that the SOPs and build notes had properly been withheld but recommended that the Division ensure that Nardi have access to the maintenance contract, which the Division declined to do.

[4] On July 6, Nardi filed a complaint against Appellees pursuant to the Act for allegedly wrongfully denying Nardi access to the SOPs, build notes, and maintenance contract. On April 5, 2022, Nardi moved for summary judgment, seeking access to all of the requested records and asking the trial court to find that Appellees had violated the Act. On June 7, 2022, Appellees cross-moved for summary judgment, arguing that the SOPs, build notes, and maintenance

contract contained information that could allow a bad actor to access the System and circumvent security features.

[5] After in-camera review of the documents in question, the trial court entered partial summary judgment in favor of Nardi on May 30, 2023, ruling that Appellees had carried their burden with respect to the SOPs and build notes but that the Division was required to provide Nardi with a redacted version of the maintenance contract. On June 5, 2023, Nardi moved to amend the judgment to reflect that he had substantially prevailed in his suit pursuant to the Act and award him fees and costs of $61,471.30. On October 30, 2023, the trial court issued an order in which it ruled that Nardi had substantially prevailed in his lawsuit against Appellees and awarded him one-third of the requested fees and costs, or $20,265.00.

## Discussion and Decision

[6] When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Merchs. Nat'l Bank*, 741 N.E.2d at 386. Both sides appeal only the trial court's partial grant of Nardi's request for fees and costs. Nardi contends that the trial court abused its discretion in failing to

award him the entire requested amount. Appellees cross-appeal, arguing, *inter alia*, that the trial court erred in ruling that Nardi had substantially prevailed in the action, which, if true, would mean that Nardi is not entitled to recover any fees or costs.

*Cross-Appeal Issue*

[7] Indiana Code section 5-14-3-9(i), provides, in part, that "in any action filed under this section, a court shall award reasonable attorney's fees, court costs, and other reasonable expenses of litigation to the prevailing party if […] the plaintiff substantially prevails[.]" Although we must determine whether the trial court erred in concluding that Nardi had substantially prevailed over Appellees, the General Assembly has not defined the term "substantially prevails" as used in the Act. "Statutory interpretation is a function for the courts, and our goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes." *Clark Cnty. Drainage Bd. v. Isgrigg*, 966 N.E.2d 678, 680 (Ind. Ct. App. 2012). Indiana Code section 1-1-4-1(1) provides guidance for situations in which a particular phrase is not specifically defined, *i.e.*, that, when constructing a statute, "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense." In order to determine the plain sense of a word or phrase, "[w]e generally avoid legal or other specialized dictionaries […] and turn instead to general-language dictionaries." *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019).

[8] "Prevail" may be defined as "to gain victory by virtue of strength or superiority[,] win mastery[,] TRIUMPH — used with *over* or *against*[.]" WEBSTER'S 3D NEW INT'L DICTIONARY 1797 (Phillip Babcock Gove et al. eds., G.&C. Merriam Company 1964) (emphases in WEBSTER'S). In the context of an adversarial lawsuit, the only thing over or against which Nardi could be gaining victory, winning mastery, or triumphing is Appellees, so, for Nardi to be considered the prevailing party in this case, he must be able to show that he won more of the overall case than Appellees. The General Assembly's use of the qualifier "substantially" bolsters this conclusion, in that "substantial" may be defined as "being that specified to a large degree or in the main [or] of or relating to the main part of something[.]" WEBSTER'S 3D NEW INT'L DICTIONARY 2280 (Phillip Babcock Gove et al. eds., G.&C. Merriam Company 1964). So, one must win the "main part" of one's case against the agency resisting disclosure in order to have substantially prevailed over it.

[9] Having concluded that the plaintiff must gain victory over the agency in order to recover fees and costs pursuant to the Act, the only question remaining is how that is to be determined in cases like this one, where a plaintiff is only partially successful in achieving disclosure. Nardi acknowledges that courts have generally disposed of such cases by evaluating a plaintiff's success in quantitative and/or qualitative terms. At the outset, we reject Nardi's suggestion that courts should look at neither quality nor quantity in cases like this. While we do agree with Nardi that courts should not decide such questions by applying rigid, mathematical formulas, we fail to understand how

a court is supposed to determine whether a party has substantially prevailed in a case if it can take neither the quantity nor the quality of the successful claims into account.

[10] That said, in the context of the similar federal Freedom of Information Act (which allows for the award of fees and costs to a requestor who has "substantially prevailed[,]" 5 U.S.C. § 552(a)(4)(E)(i)), some cases seem to have placed more emphasis on the ratio of successful to unsuccessful claims. *See Exner v. FBI*, 612 F.2d 1202, 1205 (9th Cir. 1980) (concluding that plaintiff had substantially prevailed where 86 of 92 documents were disclosed), and *Chilivis v. SEC*, 673 F.2d 1205, 1213 (11th Cir. 1982) (concluding that requestor had not substantially prevailed where "[t]he records actually ordered disclosed by the district court amounted to an insignificant portion of the documents sought in the FOIA request"). In at least one other case, the court seems to have taken a more qualitative approach. *See Westinghouse Elec. Corp. v. NLRB*, 497 F. Supp. 82, 83–84 (W.D. Pa. 1980) (concluding that, despite receiving only two of seven documents sought, plaintiff had substantially prevailed because it had received the document "principally sought" and that analysis of the question should "focus on the withholding of key documents sought by a plaintiff"). While it seems sensible to take both quantity and quality of successful claims into account, the question of which should dominate the analysis in this case is one we need not answer. We have little hesitation in concluding that Nardi did not substantially prevail over Appellees.

[11] From a purely quantitative standpoint, Nardi was successful in obtaining disclosure of one of the three documents he requested. Nevertheless, if the record supported a conclusion that the one document Nardi did receive "outweighed" the two he did not, we would be inclined to rule in his favor. That said, looking at Nardi's one successful claim in qualitative terms does not help him either. The maintenance contract that was disclosed was heavily redacted, leaving only (in the words of the trial court) "standard" contract language, which is highly unlikely to provide much insight into the operations of the Division or nature of the System. In any event, even though Nardi had already accessed and reviewed the latest maintenance contract in unredacted form, he continued to seek disclosure of the SOPs and build notes after reviewing it. The undisputedly mundane nature of the redacted maintenance contract undercut any suggestion that its disclosure somehow outweighed the nondisclosure of the other two documents. We conclude that the trial court erred in finding that Nardi had substantially prevailed over Appellees, which means that it also erred in awarding him any fees or costs. While we leave the trial court's entry of partial summary judgment in favor of Nardi undisturbed, we reverse its partial award of fees and costs.

[12] We affirm the judgment of the trial court in part and reverse in part.

Altice, C.J., and Felix, J., concur.

ATTORNEYS FOR APPELLANT

William R. Groth
Daniel Bowman
Bowman & Vlink, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Theodore E. Rokita
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana