George E. BLUE, Petitioner-Appellee, Cross-Appellant,

v.

BUREAU OF PRISONS et al., Respondents-Appellants, Cross-Appellees.

No. 76–3793.

United States Court of Appeals, Fifth Circuit.

March 30, 1978.

---

John W. Stokes, U. S. Atty., Richard A. Horder, Asst. U. S. Atty., Atlanta, Ga., Edwin E. Huddleson, III, Thomas G. Wilson, Attys., App. Section, Civ. Div., Dept. of Justice, Washington, D. C., for respondents-appellants, cross-appellees.

Ralph Goldberg, David Buffington, Atlanta, Ga., for petitioner-appellee, cross-appellant.

Before JONES, GODBOLD and GEE, Circuit Judges.

GEE, Circuit Judge:

This appeal concerns the criteria for award of attorneys' fees under the federal Freedom of Information Act (FOIA).

At the time he commenced this action, the petitioner, George Blue, was a prisoner in the Atlanta federal penitentiary. In the spring of 1975 he wrote to the Bureau of Prisons, requesting access to his institutional file under the FOIA. Within the next two months the Bureau released 207 of the documents in his file but withheld fifty other documents on the ground that they were exempt from disclosure under the act. Blue brought this FOIA suit disputing the Bureau of Prisons' nondisclosure of the 50 documents, as well as its imposition of a copying charge for the documents that had been released. The district court held that Blue was entitled to the released documents without charge and that 30 of the 50 disputed documents were not exempt and should be disclosed. In the succeeding months Blue acquired almost all the final twenty documents, most of them in connection with a separate civil suit and the remainder in connection with a change in policy on the part of the United States Attorney General.[1]

Hence, the only issue left in dispute is the district court's final holding: that the petitioner is not entitled to attorneys' fees under the FOIA. Petitioner argues that this holding was in error because the district court failed to consider the twelve criteria for attorneys' fees set out in our decision, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). We cannot accept this argument. The *Johnson* criteria—relating to such factors as the skill of the attorney and the novelty and difficulty of the case—go to the question of the amount of attorneys' fees, once it has been determined that attorneys' fees are appropriate; they have been cited repeatedly as the correct criteria for determining the size of an attorney's fee award. *Wolf v. Frank*, 555 F.2d 1213 (5th Cir. 1977) (and cases cited therein); *McGowan v. Credit Center of North Jackson*, 546 F.2d 73, 77 (5th Cir. 1977); *First Colonial Corp. v. Baddock*, 544 F.2d 1291 (5th Cir. 1977). But these criteria do not solve the threshold question here, that is, whether attorneys' fees are appropriate at all.

Unlike the British courts, American courts have traditionally awarded no attorneys' fees to prevailing parties. Certain limited exceptions to this "American rule" have developed over the years. One class of these exceptions refers to the losing party's behavior—his obstinacy, bad faith or deliberate defiance of the law; such a defendant may be taxed with attorneys' fees

1. According to this new policy, even documents believed to be exempt are to be examined to determine whether they might nevertheless be disclosed.

essentially as a penalty for forcing the plaintiff to needless litigation. *See Johnson v. Combs*, 471 F.2d 84 (5th Cir. 1972); *Williams v. Kimbrough*, 415 F.2d 874 (5th Cir. 1969), *cert. denied*, 396 U.S. 1061, 90 S.Ct. 753, 24 L.Ed.2d 755 (1970).

■ A second exception relates to the benefits that the plaintiff's action bestows on other persons; under the "common fund" exception, a prevailing plaintiff may be awarded attorneys' fees when his action creates a common fund or benefit in which others may share. *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). By extension, the "common fund" exception has been used to award attorneys' fees to a plaintiff whose actions benefit an identifiable class—such as the shareholders of a corporation— whether or not that benefit takes the form of a common fund. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

Finally, in recent years some federal cases have awarded attorneys' fees on the theory that a plaintiff should receive this award when he acts as a "private attorney general," that is, when his action vindicates an important congressional policy for the public at large. *See Newman v. Piggie Park Enterprises, Inc.,*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); *see also Northcross v. Board of Education of Memphis City Schools*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973); *Fairley v. Patterson,* 493 F.2d 598 (5th Cir. 1974) (and cases cited therein). In the landmark case of *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court sharply curtailed the applicability of the "private attorney general" theory. While leaving intact the traditional, narrow equitable exceptions to the "American rule," the Court held that attorneys' fees could not be awarded on the basis of this theory in the

absence of statutory authorization for attorneys' fees. An underlying reason for this decision is that, in the absence of congressional guidance, courts are ill equipped to "pick and choose among plaintiffs and . . . statutes" on the basis of their supposed relative importance to the public welfare. *Id.* at 270, 95 S.Ct. at 1627. Pointing out that Congress has enacted different sorts of attorneys' fees provisions in several statutes, the Court said that judicial decisions on attorneys' fees are not to "make major inroads on a policy matter that Congress has reserved for itself." *Id.* at 261, 270, 95 S.Ct. at 1627.

■ The *Alyeska* decision thus requires that where no traditional equitable exceptions to the "American rule" come in play, the federal courts must look to specific congressional authorization to determine the conditions for an award of attorneys' fees. *See Nationwide Building Maintenance, Inc. v. Sampson*, 182 U.S.App.D.C. 83, 88, 559 F.2d 704, 709 (1977). For this reason, we must examine the specific attorneys' fees provision of the FOIA, as well as the congressional intention behind that provision.

■ The original FOIA made no provision for attorneys' fees, and since all FOIA suits are civil suits against federal agencies or officials, attorneys' fees were precluded under 28 U.S.C. § 2412.[2] But the 1974 FOIA amendments provided, among other things, that a court "may assess" reasonable attorneys' fees against the United States in any case in which the plaintiff substantially prevails. 5 U.S.C. § 552(a)(4)(E).

This language comes from the House of Representatives bill, and the House Report that accompanied the bill explained that the provision of attorneys' fees "has been considered desirable when the suit advances a strong congressional policy"; the report cited similar provisions in several civil rights

---

2. This statute provides: "Except as otherwise specifically provided by this statute, a judgment for costs, as enumerated in section 1920 of this Title [28 U.S.C. § 20] but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity . . . .

statutes. H.R.Rep. No. 876, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News, pp. 6267, 6272. In interpreting the statutory clauses cited in this report, the courts had held that a successful plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman, supra*, 390 U.S. at 402, 88 S.Ct. at 966; *Northcross, supra*, 412 U.S. at 429, 93 S.Ct. 2201; *see also, Johnson v. Georgia Highway Express, supra* at 716 (and cases cited therein).

But in the Senate Report adopted as the bill's Conference Report, it was made clear that the rule of presumptive award of attorneys' fees in the civil rights context was not to be applied directly to awards of attorneys' fees in the FOIA context. The original senate bill had listed four criteria for the award of attorneys' fees to plaintiffs who substantially prevailed: the benefit to the public deriving from the case, the commercial benefit to the complainant and the nature of his interest in the federal records sought, and whether the government's withholding of the record sought had a reasonable basis in law. S.Conf.Rep. No. 1200, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News, pp. 6285, 6288. These criteria were eliminated in the final version adopted by Congress, but as the Conference Report explained, "by eliminating these criteria, the conferees did not intend to make the award of attorney fees automatic or to preclude the courts, in exercising their discretion as to awarding such fees, to take into consideration such criteria." *Id.* Hence attorneys' fees under the FOIA were not to be awarded as a matter of course, as in civil rights cases; rather, a court could use the Senate's four criteria to circumscribe the conditions under which it would make such an award. As the Conference Report explained, these four criteria were only eliminated "because the existing body of law on the award of attorney fees recognizes such factors," so that "a statement of the criteria may be too delimiting and is unnecessary." *Id.*

In short, the question of whether to award attorneys' fees is left to the sound discretion of the court, guided principally by the Senate's four criteria and, in addition, by any applicable criteria from the older body of equitable decisions on attorneys' fees. Clearly, however, the Senate's four criteria are the central guidelines for the award of attorneys' fees to a prevailing party under FOIA. *See Nationwide, supra; Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509 (2d Cir. 1976); *Pope v. United States*, 424 F.Supp. 962 (S.D. Tex.1977); *American Federation of Government Employees, AFL–CIO v. Rosen*, 418 F.Supp. 205 (N.D.Ill.1976); *Kaye v. Burns*, 411 F.Supp. 897 (S.D.N.Y.1976).[3]

■ With respect to the first of these considerations—"the benefit to the public deriving from the case"—it is doubtless true, as the D.C. Circuit has suggested, that the successful FOIA plaintiff always acts in some degree for the benefit of the public, both by bringing government into compliance with the FOIA disclosure policy and by securing for the public at large "the benefits assumed to flow from the public disclosure of government information." *Cuneo v. Rumsfeld*, 180 U.S.App.D.C. 184, 191, 553 F.2d 1360, 1367 (1977). Yet the Senate Report's discussion of this criterion referred repeatedly to disclosure to the press and to public interest organizations, thus strongly suggesting that in weighing this factor a court should take into account the degree of dissemination and likely public impact that might be expected from a particular disclosure. S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974). This goes to the central purpose of the disclosure act: to assist our citizenry in making the informed choices so vital to "the maintenance of a popular form of government." *Id.* at 2. Thus the factor of "public benefit" does not particularly favor attorneys' fees where the award would merely subsidize a matter of

---

**3.** That the petitioner "substantially prevailed" is not disputed here. *See Nationwide, supra; Cuneo v. Rumsfeld*, 180 U.S.App.D.C. 184, 553

F.2d 1360 (1977); *Rosen, supra; Goldstein v. Levi*, 415 F.Supp. 303 (D.D.C.1976); *Kaye, supra*.

private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices.

In the second and third criteria for attorneys' fee awards, "the commercial benefit to the complainant and the nature of his interest in the case," the Senate Report showed a preference for public interest groups, indigents and disinterested scholars over private commercial enterprises' efforts for disclosure. The reason relates to assuring judicial review over agency decisions against disclosure. Both houses of Congress had heard witnesses who pointed out that without attorneys' fees litigation costs prevented many individuals and nonprofit groups from seeking judicial review of agency refusals to disclose, thus permitting agencies to escape compliance with disclosure laws. But this was not true of commercial plaintiffs, since in those cases "the private self-interest motive, and often pecuniary benefit to the complainant will be sufficient to insure the vindication of rights given in the FOIA." *Id.* at 19.

The fourth and last criterion, "whether the government's withholding of the records sought had a reasonable basis in law," suggests that attorneys' fees would be favored if an agency's nondisclosure was designed to avoid embarrassment or thwart the requester.

In the instant case the district court's denial of attorneys' fees discussed only the first of these four criteria and, in considering this factor of "benefit to the public," quite properly stressed considerations of probable public impact and actual dissemination of the disclosed materials. We have no dispute with the district court's view that nothing reposing in Blue's prison file would likely be of such a nature as to benefit the general public by its disclosure.

■ But the court inexplicably determined that "criterions 2, 3 and 4 are not material in this case." In view of the legislative history of the act, it is clear that all four criteria are to be weighed as guides to the court's discretion in FOIA attorneys'

fees awards. No reason appears from the facts of this case why the remaining criteria failed to apply to the petitioner's request; that some of these factors were undisputed (e. g., the petitioner's indigent status) can scarcely mean that they were irrelevant. Hence, we must conclude that it was an abuse of discretion to neglect the remaining three criteria entirely in determining to award no attorneys' fees to the petitioner. It may be that these criteria do not weigh so heavily as the "public benefit" criterion in the instant case; but they should at least be considered in the balance.

■ As an additional consideration, the district court mentioned that an award of attorneys' fees in prisoners' FOIA suits might be very expensive for the federal government and might also clog the federal courts. It may be noted that the threat of attorneys' fees could well have the reverse effect by encouraging voluntary compliance without litigation. But quite aside from this, the district court is of course free to take into account equitable factors in addition to the four criteria discussed above; this assumes, of course, that there is no prejudice to the prisoner's clearly established right of access to the courts. *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 483, 21 L.Ed.2d 718 (1969).

■ Since an award of attorneys' fees is most suitably determined by the trial court, which has heard the arguments and can measure the relative weight of the criteria guiding its exercise of discretion, we remand to the district court for reconsideration of attorneys' fees consistent with this opinion. *See Cuneo, supra,* 180 U.S.App. D.C. at 193, 553 F.2d at 1368. We, of course, express no view as to the decision that the district court should reach.

**REVERSED AND REMANDED.**